oral argument, not to exceed 15 minutes per side. Justin Scott for the appellant. Good morning. Good morning, Your Honor. I'd like to reserve three minutes, please. Very well done. Thank you. I'm Justin Gilbert, and Janet Epperson is my client. Ms. Epperson was a staffer at a residential home where she cared for a lady named Ms. Newsome. Important to this case, Ms. Newsome had a full-time disability, I would call it, a total care disability, and by that I mean it did not intermit. It did not last only 12 hours. It lasted all 24 hours. She had Down syndrome. She had seizures. She could not feed herself. She was a total care client. The issue in this case concerns my client being asked to remove Ms. Newsome from the facility for four hours without a nurse. My client was not a nurse. She refused to do that on the grounds that she wasn't a nurse and that Ms. Newsome was entitled to a nurse. The employer said, that is insubordination. You are fired. That fact is undisputed, that she was fired for refusing to take Ms. Newsome from the home without a nurse. Was it because she was uncomfortable with doing the act? I think that was the word that she used, or that she thought it violated the law? Both, Your Honor. Did she use comfortable, though? She did. That's a little different. I'm not doing it because it violates the law, but a lot of things you might not want to do because you don't feel comfortable about it. I don't necessarily think it's inconsistent, however. She was uncomfortable with the notion that I, not being a nurse, would be removing someone from a home. That's not a cause of action, though, is it? Refusing to do something that would make you uncomfortable. You also have to believe that it would be a violation of law, or believe that it would be illegal. Reasonably so, right? Tell me what law she reasonably believed that she was violating if she took out the patient. She understood that the patient was legally entitled to have a nurse for 24 hours. What law is that? We've cited it in our brief, Your Honor. 42 U.S.C. 1396 is a patient's right to medical care, and then Tennessee adopts that law at TCA 715-101, and then a facility does that by putting in place care plan documents which spell out the needs of the client. The issue of the 24 versus the 12 hours came into place because it just so happened that Ms. Newsom had a roommate who was also a total care client. They had one nurse in one room for both of the total care clients. There was no need for two nurses. Of course the facility could not bill 24 hours for this nurse for Ms. Newsom plus 24 hours for the other patient. Obviously they split 12 and 12. There was always a nurse there. Yes, there was always 24 hours a nurse for Ms. Newsom. In fact, if you want to drill down even deeper, the ultimate issue is what happens when these two patients are not together, when they're separated? Does she get a nurse? If she has only 12 hour care, then it wouldn't be necessary. For that issue, there is what's called a staffing plan. My client is a staffer. She needs to know how this patient is to be staffed. That staffing plan specifically says, in the event the roommate is away from the home, then Ms. Newsom is one-on-one and an LPN makes up that ratio. If they're divided, Ms. Newsom gets an LPN. Again, my client was being asked to take her from the home, divide her from her roommate, take her to a family visit for four hours. She believed, reasonably so, backed up by documents, backed up by testimony of almost every witness we deposed, that she is entitled to a nurse. She says, I'm not going to do that for good reason. There could be civil liability. It could potentially be criminal liability. She's fired for that. We argued in the district court that we should get the summary judgment here. The facts are undisputed. It's not one of those situations where maybe she was wrong, but she had a reasonable belief or a good faith belief. She was right. This lady does get 24 hours care. There's no dispute that she refused to take her without a nurse. There's no dispute that that's the only reason she was fired. We should have gotten this summary judgment. I do, Your Honor. I think the statute and the common law have some differences, but not relevant to Your Honor's question. There's a sole cause in the statute that's not present in the common law, but otherwise, as to the actual refusal, it would be the same. If you look at our evidence, which consists of the individual support plan, which is distinguished from the staffing plan, the support plan says Ms. Newsom is approved for 24-hour nursing. She shares a nurse with her housemate who is also approved for 24-hour nursing. However, the residential home only bills for 12 hours per day of nursing per person. Request to decrease nursing to 12 hours per day. That's plainly explaining the context of there being two people in the room. If you have to ask the further question what happens when they're not together, the staffing plan. Which is the document that they are legally obliged to follow? I think the law just speaks in terms of a plan of care. Our client and the home say that the individual support plan is the more detailed one, the ISP, and it's about 17 pages long. The staffers, like my client, are sort of given a summary, which is a staffing plan. Are there differences in the comprehensive plan as opposed to the one-page one? The district court seemed to think there was a conflict. I don't think there is a conflict, Your Honor. The staffing plan more directly addresses what happens when they're not together in the room. So I would say it's more of an on-point clarification for a staffer, not as detailed. But I don't think there's a conflict. The ISP explains the context of the 12 hours, because there's two people there. The staffing plan says here's what happens when one person is taken away. And all of the witnesses agree that Ms. Newsom did, in fact, get 24 hours care. When I say all the witnesses, I'm talking about the nurse, the corporate HR manager who explained the context of 12 hours billing, the home manager who explained the context of 12 hours billing, and maybe most importantly, the case manager, who is Ms. Henline. If you look at page 21 of her deposition, she tries to hedge a little bit, but when she's pinpointed on the question, if the roommate is away, does Ms. Newsom get an LPN? Yes, she must have a nurse. And then finally, the home manager agrees it's one-to-one with an LPN. So in summary, if the documents back her up, if that's her understanding from being there and knowing what's going on, if the nurse backs her up, if all of the witnesses back her up, if the staffing plan backs her up, I fail to see how her belief is not reasonably held. And because that's so overwhelmingly so, we're respectfully asking the court not only to reverse the grant of summary judgment to my friend and colleague in the residential center, but to further grant the summary judgment to my client. Thank you. Good morning, Your Honor. Tom Henderson for RHA. We believe Judge Breen's grant of summary judgment in our client's favor should be affirmed. First, there is absolutely no factual basis for the claim that the ISP, the support plan, required 24-hour nursing for the client, or that a nurse was required to accompany this client to her home for Christmas. Second, there is no reasonable belief held by the plaintiff in this case. To the contrary, what we have instead is shifting litigation reasons that were given in response to developments and depositions or in other terms. I'm concerned about this Doe, the young woman. Isn't the medical evidence that she has to have her feeding tube flushed every four hours or maybe even more frequently? Every four hours. What the record shows is that this trip was going to be taken at a time where she would eat lunch or have feed, be fed, take the trip, and then be back in time within that four hours. Okay. Exactly. It seemed to me that the estimated time of the trip was four hours. Correct. You've got a child who cannot speak. No, she was an adult. Who cannot speak, who cannot take care of herself, who cannot eat, who cannot respond in any way, who is fed by a feeding tube. The testimony is the tube has to be flushed every four hours and more frequently if something is stopped up or if there's a problem. If necessary. I'm struggling with your position that it's not an appropriate and reasonable belief of a non-LP and a non-nurse that she doesn't want to get out on the road and have a crisis or a seizure, which this person is also subject to. That's a long answer, but I'm going to get there. We'll start with what the ISP says, which is what controls the plan of care. It is the individual support plan. Now, all agree, the plaintiff agreed in her deposition that the ISP does not require 24-hour nursing care for this individual. She had conceded that. But their response was it requires 12 and the other person requires 12 because that's the way it's paid. One person there 24 hours, one pays 12, one pays 12 and we're done. And that was a supposition from the plaintiff's counsel in the trial that was never shown by proof. In the ISP, it says on page 5, Jackie's doctor has recommended 12 hours a day nursing care. And the ISP also says Jackie receives 12 hours per day nursing care. Our contention is that 12 hours in the ISP means 12 hours. It does not mean 24 hours. But do we ignore the context? I'm sorry? But there's a context. And the context is that she's receiving 24, they're both receiving 24, and they're being billed 12 and 12. If you look at page 5 before that, that's where this doctor says, I don't think the doctor would say I'm going to recommend where he says it would be helpful for her to have 24, but I'm only going to recommend 12. Because what the ISP also says is that the nurse is required to take care of the PEG tube, the feeding, the cleaning, all that. That's why the nurse, and it's significant that the ISP says the nurse takes care of the PEG tube. Because what the ISP also says as far as trips away from home says nothing about the nurse. It says the staff shall coordinate it. But then the single document staffing plan that flows from the ISP explains it and says an LPN will be used to satisfy that need. I'm not sure what the exact wording is. Because that's important too. Because again, the staffing plan does not control, we all agree that. And again, if there's a difference between the staffing plan and the ISP, the ISP controls. What the staffing plan says is that if this patient's roommate is away from home, then this patient will have that nurse at the home. But it does not say that if Jackie leaves, then the nurse goes with her. Well, how else would it be that she would be without the nurse if the nurse didn't go with the other cohabitant? I'm sorry? You've got one nurse there for two people. It says if this person leaves, then we're going to have an LPN for Jackie who stays. Well, yes, if this person is taken care of otherwise, then you're guaranteeing that there's going to be an LPN for Jackie. Right, because we don't know how long that person's going to be away from the home. So Jackie will need that taken care of. But that does not mean if Jackie leaves for less than four hours that the nurse has to go with her. And again, these documents are very significant, especially ISP, because this is what people use to determine. That's the staffing plan, that's not the ISP. I don't know why it doesn't say that. So we'll know who to have there. It does not say then that the nurse has to go with her on a short trip away from the home. And the ISP definitely doesn't say that. I want to go through this because it's significant to point out how things developed. The complaint in this case alleged that the ISP required two people for her at all times. Not anything about a staffing plan. We took the plaintiff's deposition, and that's when the theory changed. The plaintiff said, no, I agree the ISP doesn't require two people, but what happened was I saw a staffing plan. And this staffing plan said, and Judge Brink quoted, when the client is out in the community and not in a home, she is supposed to have a direct care staff and a nurse. The plaintiff is the only person ever to have seen this alleged document. I asked her about it, she said she saw it, she knew it was important, but she didn't show it to anybody, she didn't give it to anybody, she didn't make a copy of it,  As Judge Brink noted, the plaintiff never produced this staffing plan. Frankly, we believe she didn't produce it because it doesn't exist, we've never seen it. But then, that behavior to me alone shows she had no reasonable belief. Especially when there's all the communication going back and forth between people about this issue. I think it would have been reasonable for the plaintiff to have said, look, in addition, here's the staffing plan that I just found, and here it is, I made a copy of it for you. She didn't do that because it didn't exist. Then she switched to a new theory. The new theory is that the staffing plan required 24 hours per day of nursing, and that a nurse had to accompany her. Again, as Judge Brink noted, that staffing plan does not say that. It doesn't say either of those things. To the extent it says, again, that if her roommate leaves, she gets the nurse, that's absolutely right. But that does not translate into a short trip having to have a nurse required. And more importantly, or as importantly too, what the plaintiff said finally at her deposition was not that the ISP was violated, but that the staffing plan, I believe the staffing plan was violated. Violating a staffing plan does not violate any law, rule, or regulation that we can find. And as significant as Judge Griffin noted, she did not say during all this conversation that this was illegal, or she felt it was unlawful, she said it was uncomfortable. We asked her in her deposition, what law did this violate? Did you believe this violated? She couldn't come up with one. She didn't know of one. So that's why I say... No, if you reasonably believe that you are being asked to do something illegal, you need to know that at the time, not later. You don't have to prove that it's actually illegal. No, but you have to know it. What she said was... I think her deposition said that they did not provide a nurse, and for me to take her without a nurse broke the law. Well, in her deposition, she says it broke the law. Right, but we asked her again in the deposition, even which is months after that, what law did it violate? She didn't know. You know what? I wouldn't know. You can't expect her to cite the law to give you a statute. Well, I think there's two points here. One, there has to be some law that it violates. Well, if you're violating the plan, then you're violating the law. No, that's the point. Violating a staffing plan is not a violation of any law. Well, you think it's not, and your opposing counsel think it is. What is a layman supposed to think? I don't know what a layman is supposed to think, but I think as far as the prima facie case, you've got to prove either a violation of the law or a reasonable belief of a violation of the law. And you don't have either of those things. But there's no reasonable belief if there's no law that applies. If she understands the 17-page and the additional one-page document to be the rule that governs what must be done, and understands those to be broken by requiring her to take someone far away from her home location without a nurse, that's still, you think, not an allegation that it's breaking the law? I would imagine that her supervisor said to her, this ISP is the law of what you do. You're going to do this because you have to do this. Because we've told Medicaid in the state of Tennessee that that's what we're going to do. And if that were the case, the claim, I would agree with you. But what the plaintiff has admitted here was there was no violation of the ISP. It was the staffing plan, and the staffing plan is a separate document. And she has also admitted that to the extent there was any discrepancy between the staffing plan and the ISP, the ISP controls. Again, I don't think a person has to know you violated 42 U.S.C. 1981-A3A. But I think as far as proving the prima facie case legally, you either have to show the violation of some real statute, or a reasonable belief as to the violation of some real statute. Because otherwise, anybody could just say, I believe this is a violation of law, and you'd never be able to terminate anybody for insubordination. And what about the argument that the 12 hours and 12 hours, which seems to give 24-hour care to someone, you have your billing person testifying. Well, what we have is the ISP, which controls. We all agree the ISP controls. But you have your employees testifying that 24 hours was the expected coverage for Jackie, right? When she's in her home, yes. I guess maybe we're down to what's really bothering me. You may have put your finger on it. You want a nurse 24 hours with her in the home where everything that she needs is located. And you're going to put her in a car and ship her for 4 hours down the road to a home that's not where she lives without her care, and then you're going to haul her back hopefully within the 4 hours. It just seems to me very reasonable that you would think the greater danger to Jackie is to be on the road away from where she lives and where all of her facilities and accoutrements for treating her condition reside. And that's when she needs the nurse because if she has a seizure there, what's this driver going to know what to do? I'd like to address that first. We don't ship her off somewhere. We take her to her home where she lives, where her family is. Fair. And that is something that is good to do for somebody like that, to get them out there. Absolutely. But is it more dangerous? The testimony was the nurse was needed solely for the PEG tube issues. The testimony was that if they were on the road, something came up, they would take her to the hospital. Why does she have 24 hours? Why does she have even 12 hours if she only needs a nurse every 4 hours? Because that's just what the ISP says. You've got to realize that these individual support plans are what controls the care. And if it says 12 hours, regardless of why it may say 12 hours, if the ISP says 12 hours, it's 12 hours. And has it been determined that the – Well, is it clear that the meaning, the correct meaning of the ISP is 12 hours? Yes, that's what the doctor has down there. It says Jackie receives 12 hours of nursing per day. But this language about both needing 24 hours, so just calling it 12 hours. That's not what it says, though. It does not say that. It said Jackie had been approved for 24 hours. Physician recommends a decrease to 12 hours. 12 hours is it. It also says Jackie receives 12 – Let me ask you one question. Was it necessary for the physician to do that in order for you only to bill for 12? I have no idea. The way I look at this, Your Honor, I deal a lot more with IEPs, educational, than I do these. But this is the document where people have to be able to go and say, this is the level of care that is provided. You don't necessarily have to know why it's provided, but if it's 12, it's 12. It's not 24. If it's 12, I presume you're assuming it's the 12 daylight hours. Correct. She goes on the road to visit her family. Why doesn't the nurse accompany her during that 12 daylight hour time? Because it's deemed that it's not necessary. Because the ISP doesn't have it. Because the plan was to get her there. The ISP doesn't say the nurse gets off if you take a road trip. No, but what the ISP does say, where a nurse has a duty, it's spelled out. The ISP specifically spells out that she performs the PEG tube functions. When it talks about trips away, it doesn't say anything about a nurse. So a nurse is not required. And, yes, it would be great if- It doesn't say anything about a nurse going with her if it were a five-hour trip either. But you would, based on your every four-hour PEG, expect that a nurse would have to have gone, right? I don't think there's any record proof that she was ever gone more than four hours. But we're talking about what the ISP says. You're saying because the ISP doesn't say you have to have a nurse if you go on a less than four-hour trip, then you don't have to. But the ISP doesn't say you have to have a nurse if you go on a six-hour trip. What the ISP says about the trips is that-let me find it here. Agreed. The parties agreed that if a nurse was required to accompany her on a visit, the ISP would say that. Now, tell us what the ISP says. The ISP says, quote, on this, Jackie enjoys visiting her family in Newburgh. Action plan under that, and this is page 12 of the ISP. Quote, staff coordinates visits with her family. Staff coordinates. Coordinates. Then under responsible person or entity, it says Jackie and staff. It does not say nurse. And again, I will point out where a nurse- A responsible entity for coordinating or responsible entity for accompanying. The whole thing. It just says responsible person or entity, Jackie, staff. For what? Responsible person or entity. It's on page 12 of the ISP. And again, I want to point out where that says nothing about a nurse. At page 7 of the ISP, it specifically says, quote, only Jackie's nurse can administer fluids, nutrition, and medications. So again, where the nurse is required, it's specifically spelled out in the ISP. Okay. And it's the ISP, though, that has this language about being approved for 24-hour, having a roommate who's also approved for 24-hour, only billing 12 hours per day per person, request to decrease. That's in the ISP, not the staffing plan. Correct. Okay. You don't think that that leads to a reasonable inference that each of these people are getting billed for 12 hours, but they're getting 24-hour nursing? Let me answer that. One, this ISP was amended in October of the year before she was terminated in December, three months before she was terminated. The plaintiff testified in her deposition she'd never seen this ISP. She hadn't looked at it before she was terminated. So, no, I don't think she could have a reasonable belief based on that document, since she never saw that document. But you're saying that she can have no reasonable belief. That's correct. Did she see the staffing plan? She said she did after she was terminated. There's two of them she said. First she said, and these are both after she was terminated, she saw the one she said that said, quote, if Jackie goes out on a leave, then a nurse goes with her. That's the one that she never produced to us, never made a copy of, never did anything. She then produced this other one that doesn't say that, but she says, now this is the one that says if her roommate goes away, then Jackie has the nurse at the home. And everything that she experienced while she was there is that this girl, this woman, had 24-hour nursing. I'm sorry? Jackie had 24-hour nursing all the time, right? No. There was a nurse at the home 24 hours a day. Under the ISP, and again, page 4 or 5, quote, Jackie's doctor has recommended 12 hours a day nursing care. Again, these things are used by people who don't know. You can argue about why a doctor did something, whatever. The bottom line is if an ISP or an IEP or anything else says 12 hours, it's 12 hours. What about the language Judge White just read about saying that we will do 24 hours because she has a roommate. We'll bill 12 to her and 12 to the other one, meaning that there was a nurse there 24 hours. There's no doubt at home there was a nurse there 24 hours. But that language is in the ISP, isn't it? That language is in the ISP as explained, but the ISP's requirement is 12 hours. It's not 24 hours. The doctor said reduce. You get to pick what hours. Is that the deal? You get to pick what hours? We don't randomly pick hours. What we did was we did breakfast, lunch, dinner. That's the time, the 12 hours that Jackie needs it for her PEG tube, which is also consistent with what the ISP says. Okay, so when she objected, somebody pulled out the ISP and says, Oh, no, you have it wrong. Even though she has 24 hours and even though you believe this, no, here's the ISP. This is what governs. I don't know if we told her, gave her the ISP. I know we consulted the physician's orders. That's in the record. You what? We consulted the physician's orders, which were, and this is in the record too, and the ISP, and we said 12 hours because that's what it says. Mr. Henderson, do you concede that the ISP has the force of law? I don't know what you mean by force of law. I will say this. The ISP is the document that controls her care. But that's required by the federal regulations. Correct, yes. So a violation of the ISP would necessarily violate the federal regulations, would it not? I've thought about that. I don't know if it's a per se violation of it. I don't know. It's certainly something that, I mean, you don't want to do. That's why you have it so you know what care to give. Well, the federal regulations require them to give care consistent with the ISP, right? Yes, yes. So if they don't, it violates federal law. Well, it violates federal law if you, you know. All right, so I would say it has the force of law. If you violate it, you violate the law. Correct. Okay, final question is I noticed that our mediation office was involved in this early on, but I don't see any indication that there ever was a mediation conference. Was there ever a mediation conference? Did we have one, Justin? We did. We did, yeah, I thought so. You did? Okay. Face-to-face or just a telephone conference? It was telephone. It was telephone. All right, so we don't, that's already been tried. I just wanted to make sure that it had gone through the channels. Just to follow up to your question, the ISP is the standard care, the staffing plan is not in the record clearly. You've emphasized that. Any further questions for Mr. Anderson? Okay, Mr. Gilbert, I think you've got three minutes rebuttal. Yes, Your Honor. I've got four little kids, and unlike when I was growing up, they can watch TV and they can press a pause button, they can go out and play with some neighbors, and they can come back, pick up right where the TV was, and not miss their show. Jackie Newsom's disability is not that way. There is no pause button. It is 24 hours a day. It is not 12 hours a day. It is not four hours a day. It is not intermittent. The 12 hours in context, and I think Judge White used the right word, is just a recognition that there's two people in the room. We're not going to double bill. We're going to bill one 12. We're going to bill the other 12. If 12 hours is all there is, how would the ISP address the issue of taking time out? In other words, if it's the morning, breakfast, lunch, and dinner, which was the description timeframe, that's daylight hours, does the ISP allow the care provider to delete four hours in a day and not provide it? How do you work the 12 hours if you send someone away for four? I have to respond that it's, first, a false hypothetical. Nobody believes that. Everyone, all of the witnesses, know she gets 24 hours care, and when they're separated, the nurse goes with her. In a hypothetical case where someone truly only did need 12 hours, but they had a 24-hour around-the-clock disability, it wouldn't make any sense, would it? It just wouldn't, and ultimately that's why their case doesn't make sense. Well, it could make sense if you accept that what she needed the nurse for, as opposed to someone else, is to clean her tube. If that were the only issue, that if this tube went off every four hours, then yes, I guess in that situation, yes. But this is someone who cannot swallow, cannot speak, has the tube issues, has Down syndrome, has seizures. If I were to look at the ISP, I wouldn't go to page 12, as Mr. Henderson cited you to, I would go to page 6, where it explains the context of the billing. My client being a staffer, you're quite right, Judge Stranch, that's why they give the staffing plans, this is what you have to do. She has to know who has to accompany this person when she leaves, because she's the person that's leaving with her, and the plan spells it out. If they're separated, the nurse goes with the nurse. But she didn't even have that, did she? She did have that, yes. And I'm not even sure I follow that argument. The individual staffing plan has sometimes been referred to as an ISP from my client versus individual service plan, also ISP. But yes, both of those documents are in the record. My client didn't keep a copy of them after she was fired. She's being deposed without having ever, she's going from memory off this staffing plan, because it wasn't produced. No, no, but was she asked the question whether she saw it? Yes, I think she testified as to her memory of the staffing plan, yes, yes. And her memory is correct. Both the service plan on page 6 talks about the 12 hours billing, and then the staffing plan even more pinpointedly talks about what happens when they are separated. You do not concede that the ISP only provides for 12 hours? I know for a fact it does not. I know that that's not what the context of page 6 is. I know that's not what happened in practice. And I know their own witnesses say that the 12 hours was only billing, particularly Ms. Hinlein, who said so at page 21 when she was pressed. And the district judge, though, found that, right? Yes, yes. So he ruled that this is what it means? Mr. Henderson told the district judge similar to what he said here, let's just look. It says here's a 12-hour reference here. That's got to be what it means. And when, I mean, this is the first time I've ever had to talk to judges, but I would think the logical question would be the same one that Judge Strach asked was, and I'll paraphrase Judge Strach, was it a 12-hour billing? Was that, in fact, the case? And Mr. Henderson, to my surprise, just said, I have no idea in response to that question. Of course, we do know that because all the witnesses have testified that the 12 hours is a 12-hour billing. The nurse, the case manager, the home manager, the corporate HR. So the jury will decide that? We're asking for summary judgment in our favor. However, if summary judgment is reversed and it's a triable issue, we will say that our client's belief is not only reasonable, but it's right. It's the only way that makes any common sense. And so, yes, we would try it to a jury. I mean, usually the issue of reasonable belief is an issue for the trier of fact. It's not usually ruled as a matter of law, is it? I think reasonableness usually is, and that's why I was careful to say in our brief that the proof is just so overwhelming when you've got it from even the company's own witnesses that the court should grant the verdict in our favor. All right. Thank you. Thank you much. The case will be submitted. I believe that concludes the cases on the docket.